UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROBERT SANTANA, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-10-CA-119-XR |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| *Defendant*. | § | |

## ORDER

On this date, the Court considered the Memorandum and Recommendation filed by the Magistrate Judge, John W. Primomo,[1] and Plaintiff's objections thereto,[2] concerning Plaintiff's appeal of the Commissioner's decision to deny his Social Security disability benefits.  Where the Memorandum and Recommendation has been objected to, the Court reviews the Magistrate Judge's recommended disposition *de novo* pursuant to Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1).  After careful consideration, the Court **ACCEPTS** the Magistrate Judge's recommendation to affirm the Comissioner's decision.

## Background

Plaintiff Robert Santana seeks review and reversal of the administrative denial of his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

_____

[1] Docket Entry No. 10.

[2] Docket Entry No. 14.

1

Plaintiff was born August 11, 1954, and has a high school education.[3] His past relevant work includes employment at various hotels as a security investigator, bartender, and host at a Cracker Barrel Restaurant.[4]

Plaintiff fully exhausted his administrative remedies prior to filing this action in federal court. He protectively filed his application for DIB and SSI on August 31, 2007, at the age of fifty-two (52), alleging an onset date of disability of May 1, 2007.[5] Plaintiff complains of frequent seizures, constant pain in his neck and lower back, and memory deficiency subsequent to seizures. The Social Security Administration denied his applications both initially and on reconsideration.[6] Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Karen McCoy on June 15, 2009.[7]

In conducting her evaluation of Plaintiff's disability claims, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act only through September 30, 2007.[8] At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity after May 1, 2007, the alleged onset date.[9] At step two, the ALJ found that the Plaintiff had the following severe impairments: seizure disorder, degenerative changes of the cervical spine, and degenerative changes

---

[3] (Tr. 29, 60).

[4] (Tr. 31-35).

[5] (Tr. 160).

[6] (Tr. 60-64, 78-79).

[7] (Tr. 25).

[8] (Tr. 15).

[9] *Id*.

of the lumbar spine.[10]   The ALJ found that Plaintiff's mental impairments of depressive disorder NOS and generalized anxiety disorder caused only a mild or minimum limitation in Plaintiff's ability to perform basic work activities and were, therefore, non-severe.[11] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.[12]   At step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to do light work as follows:  lift twenty (20) pounds occasionally and ten (10) pounds frequently; stand and/or walk for a total of at least six (6) hours in an 8-hour work day; sit eight (8) hours in an 8-hour work day with normal breaks; occasionally climb ramps and stairs; unable to climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, or bend; unable to crawl; only occasional overhead reaching with the arms, but frequent reaching in all other directions; frequent, but not constant, fine manipulation; and avoid work at unprotected heights, around dangerous moving machinery, open flames, or open vats of liquid.[13]   The ALJ determined at the fourth step in the evaluation process that the Plaintiff was not disabled because he was capable of performing his past relevant work in security investigation, bartending, and as a restaurant host.[14]   On August 31, 2009, the ALJ determined that Plaintiff was not disabled and the Appeals Council denied Plaintiff's request for review on December 17, 2009.[15]

---

[10] *Id.*

[11] (Tr. 16).

[12] *Id.*

[13] (Tr. 17).

[14] (Tr. 20).

[15] (Tr. 1, 10).

3

Plaintiff filed a complaint *pro se* in this Court on February 11, 2010 against the Commissioner of the Social Security Administration, Michael J. Astrue, seeking to have the decision of the ALJ reversed or remanded.[16]  Defendant filed an answer,[17] and the case was referred to Magistrate Judge John W. Primomo for a Memorandum and Recommendation.  Both parties filed briefs in the matter.

On August 23, 2010, Magistrate Judge Primomo issued a Memorandum and Recommendation to this Court, recommending the decision of the ALJ be affirmed.[18]  Plaintiff objected on September 9, 2010.[19]

### Jurisdiction

This Court has jurisdiction to review this matter as provided by 42 U.S.C. § 405(g).

### Magistrate Judge's Memorandum & Recommendation

Magistrate Judge Primomo's Memorandum and Recommendation found that the ALJ's residual functional capacity assessment was supported by substantial evidence.[20] The Magistrate Judge found Plaintiff's medical treatment for low back pain to be unremarkable.[21]  Although the Magistrate Judge suggested that the ALJ understated Plaintiff's cervical spine impairment and failed to discuss diminished sensation, he found this error  harmless because diminished sensation was

---

[16] Docket Entry No. 1.

[17] Docket Entry No. 3.

[18] Docket Entry No. 10.

[19] Docket Entry No. 14.

[20] Docket Entry No. 10 at 16.

[21] *Id*. at 10-11.

adequately accounted for in the ALJ's formulation of the RFC assessment.[22]   The Magistrate Judge indicated that the record contained substantial evidence supporting the ALJ's finding that the Plaintiff does not suffer disabling pain, including evidence of Plaintiff's daily activities, such as walking the dogs, doing chores, and cleaning out the shed.[23]   In addition, the Magistrate Judge found that the ALJ was justified in determining Plaintiff's statements at the hearing not credible to the extent they were inconsistent with the medical record.[24]

Plaintiff also claimed to be disabled because of frequent, uncontrollable seizures.  However, the Magistrate Judge found that Plaintiff was noncompliant with his prescribed treatment, and additionally drank alcohol and occasionally used illegal drugs.[25]  The Magistrate Judge concluded that Plaintiff's seizures were a result of his noncompliance with medication in combination with substance use.[26]   The ALJ restricted Plaintiff's job conditions to avoid climbing ladders, ropes or scaffolds, and to avoid work at unprotected heights, around dangerous moving machinery, open flames, and open vats of liquid, which the Magistrate Judge found adequately addressed Plaintiff's seizure concerns.[27]

### Plaintiff's Objections

Plaintiff timely objected to the Magistrate Judge's Memorandum and Recommendation.  Plaintiff makes the following objections:  (1) the ALJ failed to submit any reports showing

---

[22] *Id.* at 15.

[23] *Id*. at 10-11.

[24] *Id*. at 11.

[25] *Id*. at 11-12.

[26] *Id*. at 12.

[27] *Id*. at 14.

diminished sensation; (2) the ALJ erred in finding that Plaintiff no longer required a cervical collar to control pain; (3) the ALJ erred in finding that Plaintiff did not receive physical therapy; (4) the ALJ erred in finding Plaintiff's seizures were caused by substance use; (5) that seizures can continue to occur while taking anti-seizure medication; and (6) that the ALJ erred in finding Plaintiff did not suffer disabling pain as evidenced by his daily activities because Plaintiff was separated from his wife in 2006 and does not own any dogs.[28]  Plaintiff provides additional documentation not considered by the ALJ or the Magistrate Judge in support of his objections.

## Legal Standards

*A.  Standard of Review*

Since there are timely objections to the Magistrate Judge's Memorandum and Recommendation, the Court reviews the Magistrate Judge's recommended disposition *de novo*.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; L.R. CV-72 (W.D. Tex.).  Such a review means that the Court will examine the entire record and will make an independent assessment of the law.  However, in examining the Commissioner's decision denying disability insurance benefits, the Court is limited to a determination of whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.  42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

"Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990).  When substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.  *Martinez*, 64 F.3d at 173.  A finding of no

---

[28] Docket Entry No. 14 at 1-2.

substantial evidence is only appropriate where "there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (*citing Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).   Four elements are weighed by the Court in determining whether the Commissioner's decision is based on substantial evidence:  (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work experience. *Martinez,* 64 F.3d at 174.  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1022.  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.  *Martinez*, 64 F.3d at 174.

*B. Entitlement to Benefits*

Every individual who meets certain requirements, has filed an application for benefits, and is under a disability is eligible to receive disability insurance benefits and/or supplemental security income benefits.  42 U.S.C. § 423(a)(1); 42 U.S.C. § 1382(a)(1) and (2).  The term "disabled" or "disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A).  A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work that exists in significant numbers in the

national economy, regardless of whether such work exists in the area in which the claimant lives,

whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

*C.  Evaluation Process and Burden of Proof*

Regulations set forth by the Commissioner require disability claims to be evaluated by the

prescribed five-step process.   20 C.F.R. §§ 404.1520; 20 C.F.R. §§ 416.920.   A finding that a

claimant is disabled or not disabled at any point in the process is conclusive and terminates the

Commissioner's analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The first step involves determining whether the claimant is currently engaged in substantial

gainful activity. 20 C.F.R. §§ 416.920.   If so, the claimant will be found not disabled regardless of

his medical condition or his age, education, or work experience.   *Id*.   The second step involves

determining whether the claimant's impairment is severe.   *Id*.   If a claimant has no severe

impairments, the claimant is deemed not disabled.   *Id.*   In the third step, the ALJ compares the severe

impairment with those on a list of specific impairments.   *Id.*   If a claimant's impairment meets or

equals a listed impairment, the claimant is deemed disabled without considering his age, education,

or work experience.   *Id.*   In the fourth step, if the impairment is not on the list, the ALJ reviews the

claimant's residual functional capacity and the demands of his past work.   *Id.*   If the claimant is still

able to do his past work, then the claimant is not disabled.   *Id.*   If the claimant establishes these

elements, then the burden shifts to the Commissioner to prove that considering the claimant's residual

capacities and his age, education, and work experience, the impairment does not prevent him from

performing other jobs that exist in significant numbers in the national economy. *Watson v. Barnhart,*

288 F.3d 212, 217 (5th Cir. 2002).   If the Commissioner adequately points to potential alternative

8

employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.

**Analysis**

*A. Severe Impairments*

The ALJ determined that Plaintiff's severe impairments included seizure disorder, degenerative changes of the cervical spine, and degenerative changes of the lumbar spine.[29] The ALJ determined that Plaintiff's medically determinable mental impairments of depressive disorder NOS and generalized anxiety disorder, considered singly and in combination, did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and were non-severe.[30] In addition, the ALJ considered the four broad functional areas described in section 12.00C of the Listing of Impairments and determined that Plaintiff had only mild limitation in activities of daily living, social functioning, concentration, persistence or pace, and decompensation. 20 C.F.R., Part 404, Subpart P, Appendix 1. The record indicates only one occasion in January of 2009 that Plaintiff complained to his treating or examining physicians of depression.[31] Otherwise, the record is silent as to depression or generalized anxiety disorder and will not support a finding contrary to that made by the ALJ.

Plaintiff objects to the finding of the ALJ that Plaintiff is able to walk his dogs and make breakfast for his wife. This Court must carefully examine the entire record while refraining from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley,* 67 F.3d at

---

[29] (Tr. 15).

[30] (Tr. 16).

[31] (Tr. 678).

9

555.  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.  *Martinez*, 64 F.3d at 174.  In making his finding, the ALJ relied on Plaintiff's own admissions to social security interviewers and  evaluating physicians regarding his daily activities to show the minimal impairment of Plaintiff's daily activities as a result of depressive disorder and anxiety disorder.[32]  Plaintiff asserts that he has been separated from his wife since 2006.  However, it appears that in February of 2008 Plaintiff reported that his wife drove him to his doctor's appointment, he made his wife breakfast, and he walked their dogs.[33]  Substantial evidence exists to support the finding of the ALJ that the mental disorders described are not severe, are only a mild limitation on Plaintiff's daily activities, and that Plaintiff's testimony at the hearing lacked credibility.

B.  *Pain Resulting from Degenerative Changes of the Cervical and Lumbar Spine*

Plaintiff complains of persistent pain to his neck, shoulders, and back with numbness in his hands.[34]  In May of 2007, Plaintiff suffered a seizure and experienced a fall from a ladder in which he suffered a neck and back injury.[35]  As a result of that spinal injury, Plaintiff underwent a cervical decompression canal reconstruction with C3-C4, C4-C5, C5-C7 arthrodesis in August of 2007.[36]  The record indicates that Plaintiff tolerated the procedure well, was cleared by physical therapy on postoperative day two (2), and his pain was well controlled at discharge.[37]  In March of 2008, Plaintiff

---

[32] (Tr. 345-46).

[33] *Id*.

[34] (Tr. 202-205).

[35] (Tr. 243, 265, 299).

[36] (Tr. 299).

[37] *Id*.

reported moderate pain with movement, decreased sensation in his fingers, and neck and shoulder pain.[38] Dr. Michael Feldman indicated that Plaintiff had limited range of motion of the cervical spine, and difficulty with buttons and fine maneuvers.[39]  In July of 2008, Plaintiff presented at Jackson Health Center Hospital with complaints of chest pains, neck pain, and seizures.[40]  Radiology reports showed Plaintiff had grade 1 retrolisthesis of C3 on C4 and C4 on C5.[41]  On August 8, 2008, Plaintiff reported to Mercy Hospital to treat complaints of seizures and headaches, and CT images indicated a fibrous dysplasia.[42]  On January 10, 2009, Plaintiff presented with complaints of an additional injury to his left shoulder, and reported that he continued to wear the neck brace to control pain.[43]  The CT of the cervical spine revealed multilevel osteophytosis and neural foramina narrowing which was moderate bilaterally at C3/4, severe on the left at C4/5 and severe bilaterally at C5/6.[44]  On March 5, 2009 Plaintiff had a follow up MRI of the cervical spine which revealed loss of intervertebral disc spaces, endplate sclerosis, osteophytosis, and uncovertebral hypertrophy.[45]  In addition, facet arthritis was present, predominantly at C4-5 and C5-6.  C3-C6 demonstrated disc space narrowing and

---

[38] (Tr. 377-78).

[39] (Tr. 378).

[40] (Tr. 434).

[41] (Tr. 451).

[42] (Tr. 666).

[43] (Tr. 686).

[44] (Tr. 718).

[45] (Tr. 809).

osteophytosis, consistent with degenerative disc disease.[46]  On June 11, 2009, Plaintiff's MRI showed disc desiccation present at L4-L5 and L5-S1, with a disc bulge and facet arthropathy with moderate right neural foraminal narrowing at L2-L3.[47]   The physician's impression revealed multilevel degenerative changes most significant at L4-L5 where there is moderate spinal canal stenosis.[48]

The ALJ determined that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the described symptoms, the Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent that they were not consistent with the RFC assessment.[49]  Plaintiff complains of constant neck and back pain, but reported both taking pain medication only occasionally and that his pain is controlled with medication.[50]  In addition, Plaintiff reported that, although his physicians no longer required him to wear a cervical collar as of March 2009, wearing a neck brace helped control his neck pain.[51]  Pain, in and of itself, cannot be a disabling condition unless it is so severe that it is "constant, unremitting, and wholly unresponsive to therapy or treatment."  *Johnson*, 864 F.2d at 348.  Plaintiff asserts that he continues to experience pain; however, it appears that his pain is not unresponsive to treatment.  In addition, Plaintiff's treatment program was unremarkable in that it did not require any injections, further surgery, or extensive physical therapy.  Substantial evidence supports the ALJ's

---

[46] *Id*.

[47] (Tr. 872).

[48] *Id*.

[49] (Tr. 18).

[50] (Tr. 895).

[51] (Tr. 804).

finding that Plaintiff's pain alone is not a disabling condition.

Plaintiff testified at the hearing before the ALJ that he is unable to do almost any type of daily activity and experiences disabling pain.  It is within the discretion of the ALJ to determine whether Plaintiff's subjective statements regarding his level of pain are credible.  *Johnson*, 864 F.2d at 348. The only objective evidence available in the record indicates that Plaintiff reported to a social security interviewer in December of 2007, as well as various treating physicians, that he walks his dogs, makes breakfast for himself, and does little chores around the house such as fixing the locks on the door, cleaning out the shed, and at his wife's request throwing out a table.[52]  The objective evidence of his daily activities in December of 2007, only four (4) months following his surgery, constitutes substantial evidence that Plaintiff's statements are not entirely credible.

*C.  Seizure Disorder*

The ALJ also determined that Plaintiff has a history of seizure disorder, but that the medical evidence reveals that Plaintiff is noncompliant with his prescribed seizure medication, Dilantin.[53]  In 2007, Plaintiff suffered a fall subsequent to seizure, but reported that he stopped taking Dilantin three (3) months before the seizure occurred.[54]  In July of 2008, his Dilantin levels were undetectable.[55] In January 2009, Plaintiff reported to physicians noncompliance with his medication because it made him urinate frequently.[56]  Substantial evidence also indicates that Plaintiff drinks frequently, has used

---

[52] (Tr. 180).

[53] (Tr. 18).

[54] (Tr. 290).

[55] (Tr. 434-35).

[56] (Tr. 670, 678).

illegal drugs, and has been diagnosed by several treating physicians for alcohol abuse.[57]  Many of

Plaintiff's seizures occur in conjunction with use of alcohol or drugs, and Plaintiff continues to fail

to follow his prescribed treatment for controlling seizures.  If a claimant does not follow his

prescribed treatment plan, he will be found not disabled.  20 C.F.R. §§ 404.1530(a) and (b); 20 C.F.R.

§§ 404.930(a) and (b); *Johnson v. Sullivan*, 894 F.2d 683, 685 (5th Cir. 1990).

*D.  RFC Assessment*

The ALJ found Plaintiff capable of performing light work, with the RFC to lift twenty (20)

pounds occasionally and ten (10) pounds frequently; the ability to stand and/or walk for a total of at

least six (6) hours in an 8-hour work day; the ability to sit eight (8) hours in an 8-hour work day with

normal work breaks; the ability to occasionally climb ramps and stairs; unable to climb ladders, ropes

or scaffolds; ability to occasionally balance, stoop, kneel, crouch, or bend; unable to crawl; only

occasional overhead reaching with his arms, but can do frequent reaching in all other directions;

ability for frequent, but not constant, fine manipulation; would need to avoid work at unprotected

heights, around dangerous moving machinery, open flames, or open vats of liquid.[58]

The RFC assessment by the ALJ adequately incorporates all of Plaintiff's alleged symptoms

and is supported by substantial evidence, as described in the foregoing paragraphs.  The ALJ must

reasonably incorporate all of Plaintiff's limitations into the hypothetical questions.  *Bowling v.

Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).  The ALJ found that Plaintiff's limitations from his pain

were mild, including restrictions sufficient to include seizure disorder, diminished sensation, and

limitations in fine manipulation.  As the Magistrate Judge found, the above stated limitations

---

[57] (Tr. 290, 400, 434, 436, 439, 657, 670).

[58] (Tr. 17).

adequately incorporated Plaintiff's history of seizure disorder. *Diaz v. Astrue*, 2009 WL 1939709, *2 (N.D.Tex. 2009).

The Plaintiff objects to the failure of the ALJ to consider diminished sensation and loss of grip strength in his left hand. However, the ALJ restricted Plaintiff to light work and frequent, but not constant, manipulation, and only occasionally required Plaintiff to balance, stoop, kneel, crouch, or bend. This RFC determination adequately incorporates Plaintiff's claims of diminished sensation. As the Magistrate Judge found, if an error committed by the ALJ is harmless, it does not warrant reversal of the disability determination. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

*E. New Evidence*

Attached to Plaintiff's objections are documents constituting evidence not considered by the ALJ or Magistrate Judge, including the following: evidence that a cervical collar was recommended for Plaintiff's wear at his discharge from University Health System in December of 2009, physical therapy records for Plaintiff in July and August of an unknown year, documents illustrating recommended at-home exercises and a Tens and Estim Unit, a statement that Plaintiff was admitted to the hospital in 2010 for observation regarding seizures to which the use of alcohol of illegal drugs was not a contributing factor, and a document indicating that seizures can still occur while taking anti-seizure medication.[59]

The Court reviews new evidence only to determine whether remand is appropriate. A remand is appropriate when new evidence becomes available after the disability determination and there is a reasonable probability that the new evidence will change the outcome of the decision. 42 U.S.C. § 405(g); *Ripley*, 67 F.3d at 555 (*citing Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994)). To

---

[59] Docket Entry No. 14.

justify a remand based on the presentation of new evidence, the evidence must be "new" and "material," as well as demonstrate "good cause" for failure to present the evidence at the original proceeding. *Ripley*, 67 F.3d at 555 (*citing Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989)).

The evidence provided is "new" if it was not considered by either the ALJ or the Magistrate Judge. Reviewing the materiality of the evidence requires a two-step inquiry: (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the disability decision. *Ripley*, 67 F.3d at 555. It is not clear whether the evidence relates to the time period for which the disability benefits were denied. Some of Plaintiff's new evidence contains no date sufficient to determine to what time period the evidence relates, and cannot meet the materiality requirement.

Second, there is no reasonable probability that the new evidence would change the outcome of the Commissioner's decision. The ALJ found that Plaintiff's pain was reasonably controlled with pain medication, his subjective statements as to his pain were not credible, and the limiting effects of Plaintiff's pain were mild. Evidence that Plaintiff's physicians now recommend the use of the cervical collar would have no effect on that determination, especially in light of the fact that Plaintiff continued to wear the cervical collar despite his physician's assessment. Plaintiff's documents regarding physical therapy, at-home exercises, and a Tens and Estim Unit similarly indicate that his pain was controllable through treatment. In addition, most of the documents do not indicate the date physical therapy was received or what type of physical therapy was received, and are not conclusive as to whether Plaintiff actually received a Tens and Estim Unit. Finally, evidence that Plaintiff continues to have seizures not related to alcohol or drug use does not refute the pervasive evidence

16

in the record indicating Plaintiff's repeated noncompliance with prescribed medications for the treatment of seizures. Additionally, the new evidence provided by Plaintiff does not show any record of seizures suffered by the Plaintiff or that he was admitted to the hospital for seizures. The disability determination made by the ALJ is supported by substantial evidence. The new evidence provided by Plaintiff does not demonstrate that it relates to the time period for which the benefits were denied and fails to establish a reasonable probability that the new evidence will change the outcome of the decision. Under these circumstances, remand is not appropriate.

### Conclusion

For the foregoing reasons, the recommendation of the Magistrate Judge is **ACCEPTED**, and the decision of the Commissioner is **AFFIRMED**. Plaintiff Robert Santana's petition to have the Commissioner's decision reversed and/or remanded is **DENIED**. The Clerk is instructed to enter a judgment on behalf of Defendant and to close this case.

It is so ORDERED.

SIGNED this 5th day of October, 2010.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE